No. 17,952.

LEONARD L. ALLEN *v*. HURSEL FRANKLIN HUFFMAN, ET AL.
(307 P. [2d] 802)

Decided February 25, 1957.   Rehearing denied March 18, 1957.

1

Messrs. ALLEN & STRAIN, for plaintiff in error.

Mr. LEON H. SNYDER, Mr. NORMAN E. WALTON, for defendants in error.

*In Department.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

WE will refer to the parties by name. Vesta Huffman is the sister of Leonard Allen, and Hursel Huffman is Vesta's husband. Mr. and Mrs. Huffman filed a petition in the county court of El Paso county in which they sought a decree for the adoption of Linda Lou Allen, the eight and one-half-year-old daughter of Leonard Allen. The petition was not accompanied by the written consent of the father.

It was alleged in the petition that the mother of the child was dead and that Leonard Allen, the father, "has failed, refused or neglected to provide maintenance and support for said child for more than one year prior to the filing of this Petition and that by reason thereof your petitioners allege that the said Leonard Allen has abandoned the said Linda Lou Allen, * * *."

Leonard Allen, by written motion which the trial court considered and which we treat as an answer to the petition, moved the court for an order dismissing the petition and directing the Huffmans to deliver the custody of the child to him. In this instrument he alleged: That the mother of Linda Lou met her death in June 1947 in an explosion and fire in her home; that following the fire and death of the mother, his family volunteered to take care of the small children left motherless, consisting of a daughter Barbara, a son Michael, and Linda Lou; that one of his sisters took Barbara, his mother took the son Michael, and petitioners took the baby, Linda Lou; that the son Michael became ill and died in December 1949; that he remarried and began the re-establishment of his home in 1951 and took Barbara into his home where she has remained ever since; that when he started to take Linda Lou, his sister Mrs. Huffman asked that Linda be allowed to remain in the home of petitioners until she was a little older and he was better established; that he had contributed various means and money for the support of Linda until the petitioners asked to allow them to take her as a dependent on their income tax returns; that he had furnished incidental items and clothing for her; that he had visited Linda with the Huffmans at Colorado Springs and she, Linda, had visited him at his home near Cheraw, Colorado, many times including the entire week beginning June 12, 1955; that she was to return to his home later in the summer and he went to bring her down in July 1955 when he was informed she could never visit him unless he consented to her adoption by the Huffmans, the petitioners herein; that he had never abandoned the child; that he had not failed or refused to support her without cause, but had refused to consent to her adoption by the Huffmans; that he desired to have Linda in his home full time and that she needed his companionship and that of her natural sister, Barbara.

The case was tried to the court and findings were entered to the effect that consent by the father to adoption of the child was not necessary because he had failed, without cause, to provide reasonable support for Linda Lou for a period of one year or more, and had abandoned her, and that "the consent of the natural father of the child should be taken against him."

The pertinent statute is C.R.S. 1953, 4-1-6, from which we quote the following:

"(1) Every petition for adoption shall be accompanied by written statements of consent, subscribed and sworn to by the persons giving such consent before a person authorized by law to administer an oath.

"(2) Consent to any proposed adoption shall be obtained from:

\* \* \*

"(b) Both natural parents, \* \* \* if they are alive and have not lost their parental rights through court action or voluntary relinquishment, abandonment, or by reason of having failed without cause to provide reasonable support for such child for a period of one year or more; \* \* \* "

There is no conflict in the evidence on any question of fact material to the determination of this controversy. Suffice it to say that a thorough analysis of the record discloses that every allegation set forth in the motion filed by Leonard Allen in which he prayed for dismissal of the Huffmans' petition and an order directing the return of the child to his own home was established by competent evidence. In no particular was the truth of this evidence challenged in any matter material to the question to be determined. In all such matters the evidence offered by the Huffmans is in agreement with that offered by Allen, and tends to corroborate his statement of the controlling facts.

In *Foley v. Carnesi,* 123 Colo. 533, 232 P. (2d) 186, we recognized the universally accepted rule that

compliance with the provisions of the adoption statute are mandatory, and we there held that where the written consent of the natural parent was not "subscribed and sworn to" as required by the statute, a decree of adoption would not be sustained. See also *Storey v. Shumaker,* 131 Colo. 131, 279 P. (2d) 1057.

Question to be Determined.

*Is there sufficient evidence in the record in the instant case to sustain the finding of the trial court that Leonard Allen abandoned his daughter, or that he "failed without cause to provide reasonable support" for her?*

■ The question is answered in the negative. The uncontradicted .evidence shows beyond question that there was no abandonment by the father. With reference to the question of failure "without cause" to provide reasonable support, we deem it sufficient to direct attention to two opinions of this court which govern the disposition of this case.

In *Foxgruber v. Hansen,* 128 Colo. 511, 265 P. (2d) 233, the question was, whether the natural mother had abandoned her child and failed to provide support as a result of which she should suffer the loss of parental rights in dependency proceedings. We quote from the opinion in that case as follows:

"The record herein discloses a sad picture. The father of Linda abandoned his wife even before the child was born. When the child was nine months old and the mother desired to engage in remunerative employment, by mutual agreement the child was left in the home of the mother's sister, Mrs. Freda Hansen, while the mother worked in a small community a few miles removed from the place where her sister was caring for the baby. Ill health forced the mother to leave this community, and she eventually moved to Denver where she worked at several places, finally securing a position with a wholesale drug company at a substantial wage sufficient to maintain herself and the child. During the intervening

time she frequently went to visit the child; communicated with her and the Hansen family; sent gifts of clothing, money, food, household items, toys and medical supplies to the Hansen home. On several occasions she had Linda with her in Denver, Colorado, for periods extending from a few days to several weeks. The Hansens testified that the child had a good home and was properly taken care of while she was with them. The circumstances under which Linda was placed with the mother's sister are not disputed in the record.

"Here we have a young mother — deserted by her husband — who is forced to make a living for herself, and if possible, for her child as well, who, faced with this emergency, and by agreement with her sister, has the sister take care of the child. Admittedly the child was well cared for in the sister's household. Can it be said that this child was a dependent child within the meaning of our statute, section 1, chapter 33, '35 C.S.A.? Can it be said that the mother had abandoned the child under the circumstances above set forth? Each of these inquiries must be answered in the negative."

In *Carrera v. Kelly,* 131 Colo. 421, 283 P. (2d) 162, another situation was presented in which it was claimed that a child was "dependent" by reason of abandonment on the part of the mother, and by reason of the failure of the mother to provide support. In that case there were circumstances of harsh treatment visited upon the mother by the trial court order, wholly absent in the case at bar, which prompted sharp language from this court in disapproval of the lower court action in holding the child to be dependent. In that opinion we stated, inter alia:

"In the case of *Foxgruber v. Hansen,* 128 Colo. 511, 265 P. (2d) 233, a case concerning dependency proceedings before this same trial court, attention was called to numerous court cases which had construed our dependency statutes and announced rules for the guidance of courts having jurisdiction in dependency cases. Such

announced rules apparently were not welcomed, because we again find that they were unheeded. A process to stop this one-way traffic with the rights of parents concerning custody of their children should be evolved.

\* \* \*

"The record of the entire proceeding reveals that the court was wholly oblivious to the legal presumption that natural parents are entitled to the custody of their children unless otherwise clearly established. \* \* \* "

Except only when it is essential and of paramount necessity in the best interests of the child itself to provide otherwise, the law recognizes and enforces the right to the custody of their own children which nature gives to parents. In this connection we quote from the leading case of *Wilson v. Mitchell*, 48 Colo. 454, 111 Pac. 21, the following:

"We are firmly of the opinion that in all cases of this character the presumption is, that the parents are fit and suitable persons to be entrusted with the care of their minor children, and that the interests and welfare of such children are best subserved when under such care and control; that such presumption is like unto the presumption of innocence in a criminal case, ever present, throughout the controversy, until overcome by the most solid and substantial reasons established by plain and certain proofs. Indeed, this presumption is essential to the maintenance of society, for without it, man would be denaturalized, the ties of family broken, the instincts of humanity stifled, and one of the strongest incentives to the propagation and continuance of the human race destroyed."

We can well appreciate the concern of Mr. and Mrs. Huffman and have no difficulty in understanding their affection for Linda, and their desire to continue the relationship that has existed in the past. The simple answer is that under the admitted facts there is no support in the law for their contentions.

8

The judgment is reversed and the cause remanded with directions to dismiss the adoption petition and grant respondent's motion for custody of the child.

MR. JUSTICE HOLLAND, MR. JUSTICE HALL and MR. JUSTICE FRANTZ concur.