No. 18,402.

CHESTER TURNER, ET AL. *v.* RAY J. HUNTER, ET AL.
(350 P. [2d] 202)

Decided March 7, 1960.

Messrs. SPARKS & CONKLIN, for plaintiffs in error.

Messrs. BRYANT, PETRIE, WALDECK & KING, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFFS in error will be referred to as the Turners and defendants in error will be referred to as the Hunters, unless the reference is to one of them in which event they will be mentioned as Mr. or Mrs. Hunter or Turner.

The complaint was filed in the District Court of Montrose County by the Hunters, and the prayer thereof was for an order directing that the custody of three minor children be awarded to the plaintiffs and that plaintiffs be permitted to remove the said children to the State of California where the Hunters had their home.

Mrs. Hunter is the mother of the said children. Their father, whose name was Baldwin, died in 1948. After the death of Baldwin the custody of the children was awarded to the Turners by the juvenile court of Dewey County, Oklahoma, which court had jurisdiction over the children and their mother following Baldwin's death in that State. Mrs. Turner is a sister of the deceased father, and she and her husband have had custody of the minors under the order of the Oklahoma court since 1950.

It is alleged in the complaint that in 1953 Mrs. Hunter made application to the Oklahoma court for an order awarding custody of the children to her, based upon the grounds of changed circumstances which made it possible for her to give them proper care, following her marriage to Mr. Hunter. The Oklahoma court took the position that it had lost jurisdiction of the children and

refused to hear the matter, whereupon this action was filed in the district court of Montrose County where the Turners lived with the minors.

At the time of the trial (May 24, 1956) the three girls were of the age of 15, 12 and 9 years, respectively. The trial court, by order dated May 24, 1956, awarded custody of the two older girls to the Hunters. The decree provided that no action would be taken in connection with the custody of the youngest child, Phyllis, until the expiration of one year, and that she should remain with the Turners for that period. On June 24, 1957, the trial court granted custody of Phyllis to the Hunters. The Turners, excepting to this latter decree, seek review by writ of error. There was an extended hearing conducted by the trial court immediately prior to the entry of the judgment of June 24, 1957. The decree then entered contained the following:

"No useful purpose could be served by reviewing the evidence in detail. Sufficient to say that the plantiffs have a home by purchase which apparently is sufficient from a physical standpoint to care for the family. Both children were kept in school and did attend Sunday School and church, — it being true that their attendance was spasmodic, but certainly no one interferred with their going if they desired to, and the mother went with them on a few occasions, and the step-father took them on a few occasions.

"* * *

"There is no question in the Court's mind but what Phyllis, who is now 10 years old and has finished the 6th grade, would be, for the present at least, happier in the home which has been maintained for her by her aunt than in the home of the defendants. There is no question in the Court's mind but she probably would be given better schooling and a more satisfactory home life.

"Our Supreme Court has laid down the rule too many times for this Court to vary from it, that the issue is not which home is the better, but the issue is that under

the law the mother is entitled to the custody of her children unless strong and compelling reasons to the contrary appear.

"The Court recognizes Phyllis has known no other home than that with her aunt and uncle, the defendants; That Mr. and Mrs. Turner took these children when they were of a very tender age, — Phyllis being only a baby, and have given them every advantage at their command. The Court recognizes that the relationship which exists between the Turners and Phyllis is that of parent and child, and as before stated, it can be called a cruel thing to both the defendants and Phyllis to separate them.

"On the other hand the mother's financial condition has improved and she is now able to furnish a home which, from all the evidence involved, is a reasonable and proper home, and under the law is entitled to her children. Facing these facts there is nothing the Court can do but grant the custody of Phyllis to plaintiffs Esther M. Hunter and Ray J. Hunter, and the Parties are ordered to make such reasonable provisions as are necessary for the mother to take the child and remove her to the State of California."

Counsel for the Turners summarize their argument for reversal of the judgment in three paragraphs stated in their brief as follows:

"1. That the paramount right of the mother to custody is not compatible with the welfare of the child.

"2. The evidence supports the findings but not the judgment of the trial court.

"3. The power and authority to enter an order changing custody is a matter within the sound discretion of the trial court and that such discretion was abused herein."

The Turners have no children of their own. Mrs. Turner is a teacher. Mr. Turner is a carpenter. With each of them earning they could probably give Phyllis more in a material sense than the Hunters will be able

to provide. We fully understand and appreciate the desire of the Turners to keep Phyllis, who has been treated by them as their own since infancy. The sacrifices which they have made and the care, love and affection they have bestowed upon the child must have had many intangible compensations which will never fade from memory.

Nevertheless, the trial court has found that the mother of Phyllis is a fit person to have the custody of her daughter, and that she is able to make reasonable provision for her care and support. There has never been an abandonment of any of the children by the mother. It may well be that Turners are in a better financial position at present than are the Hunters, but this, in itself, is not sufficient reason to deprive parents of custody of their children. We cannot award custody of children to aunts and uncles against the claim of parents for the reason that the former can better afford to make expenditures upon the children than can the latter.

Counsel for Turners contend that the court did not give sufficient consideration to the policy of the law to place the "best interest of the child" above the desire of the parent to have custody. With this contention we cannot agree.

It must be borne in mind that this controversy is not between parents. In this case the aunt of the child, who has no legal rights because of that relationship, contests the claim of the mother, who has parental rights, to the custody of her own child.

In the absence of a strong showing of unfitness on the part of the mother, the aunt cannot prevail. The trial court was not impressed by the evidence offered to disqualify the mother as a fit person to have custody. Under these circumstances it is clear that the parent is entitled to custody.

The opinion of this court in *Everett v. Barry,* 127

Colo. 34, 252 P. (2d) 826, contains the following statement of well established rules of law:

"A parent, if a fit and suitable person, has the prior right of custody of his children over a grandmother or any other person or the state.

"A parent is presumed to be a fit and suitable person to have the custody of his children, and such presumption can be overcome only by convincing evidence to the contrary."

It was stated in *Fouts v. Pedrick,* 111 Colo. 141, 137 P. (2d) 1019, a case involving the custody of children: "* * * in arriving at a correct result so much depends upon the personal appraisal by the trial judge of the parties involved." In the instant case the trial court "appraised" the parties on two separate occasions. A little more than a year intervened and the court obviously proceeded carefully in determining the issue to be decided.

■ The facts disclosed by this record are quite similar to those present in *Allen v. Huffman,* et al., 135 Colo. 1, 307 P. (2d) 802, from which we quote:

"[3] Except only when it is essential and of paramount necessity in the best interests of the child itself to provide otherwise, the law recognizes and enforces the right to the custody of their own children which nature gives to parents. In this connection we quote from the leading case of *Wilson v. Mitchell,* 48 Colo. 454, 111 Pac. 21, the following:

" 'We are firmly of the opinion that in all cases of this character the presumption is, that the parents are fit and suitable persons to be entrusted with the care of their minor children, and that the interests and welfare of such children are best subserved when under such care and control; that such presumption is like unto the presumption of innocence in a criminal case, ever present, throughout the controversy, until overcome by the most solid and substantial reasons established by plain and certain proofs. Indeed, this presumption is essen-

tial to the maintenance of society, for without it, man would be denaturalized, the ties of family broken, the instincts of humanity stifled, and one of the strongest incentives to the propagation and continuance of the human race destroyed.' "

We can appreciate the concern of Mr. and Mrs. Turner and have no difficulty in understanding their affection for Phyllis and their desire to continue the relationship that has existed in the past. The simple answer to their request for continued custody is that under the facts found by the trial court, upon competent evidence, there is no support in law for their contentions.

The judgment is affirmed.