553 P.2d 82 (1976)
The PEOPLE of the State of Colorado In the Interest of S. S. T., alleged to be a dependent or neglected child.
S. L. B., Petitioner-Appellee, and concerning B. J. T., Respondent-Appellant.
No. 75-873.
Colorado Court of Appeals, Div. III.
July 8, 1976.
*86 Richard M. Stevenson, Colorado Springs, for petitioner-appellee.
Jane E. Freeman, Colorado Springs, for respondent-appellant.
Selected for Official Publication.
SMITH, Judge.
The decree entered in this dependency proceeding declared S.S.T. to be a dependent or neglect child, terminated the parental rights of her natural father, B.J.T. and declared that she was a child available for adoption. In addition, it included a finding that it would be in her best interests to be adopted by her mother's current husband.
The fundamental issue raised by this appeal concerns the proper function of a petition in dependency filed pursuant to § 19-1-104, C.R.S.1973. Specifically, the question is whether an action in dependency may be used as a means of making a child available for adoption in a stepparent adoption proceeding. We conclude that this tactic is inappropriate and contrary to the statutory language as well as the legislative intent of the Children's Code. We *87 also feel compelled to address, sua sponte, the apparent misunderstanding of the referee and the judges in the trial court of their respective functions under the Children's Code. Accordingly, we reverse with directions to vacate the decree.
In 1972 the marriage between B.J.T. (Father) and S.L.B. (Mother) was dissolved. Custody of S.S.T., their daughter, was awarded to Mother, who has since remarried. Father was ordered to make monthly child support payments of $125.
On October 25, 1974, Mother filed a petition contending that S.S.T. was a dependent or neglected child as defined in § 19-1-103(20), C.R.S.1973, because Father had failed to make the required payments. She requested, therefore, that his parental rights in S.S.T. be terminated. At some point during these proceedings, before entry of the final order, it is apparent that Mother's present husband filed, with her consent, a petition to adopt S.S.T., in which he alleged that Father's parental rights should be terminated and that S.S.T. should be determined to be a child available for adoption, pursuant to § 19-4-107(1)(e)(II), C.R.S.1973.
On December 9, 1974, Father was personally served in Nebraska with notice of the dependency proceeding. The summons included the statement that his parental rights might be terminated as a result of the proceeding. See § 19-3-103(1), C.R.S. 1973. However, although the record indicates that the parties may have discussed the possibility that S.S.T.'s stepfather might adopt her, Father's assertion is undisputed that he received neither the notice specifically required by § 19-4-107(1) (e) (II), C.R.S.1973, nor any other notice of the stepparent adoption proceeding.
A hearing in dependency, at which Father was not present but was represented by counsel, was held on January 15, 1975, before a referee. On January 21, 1975, the referee found that the $125 monthly child support payments previously ordered were reasonable and that Father had failed to pay them. She thereupon entered an order directing that Father resume the payments and that he also pay the arrearages which had accrued under the decree of dissolution. The record does not disclose that this order was ever presented to, or approved by, a judge as required by §§ 19-1-110(4) & (5), C.R.S.1973. Apparently, neither the parties nor the referee treated any other matters raised by the dependency or neglect petition at this hearing. The referee did, however, order an additional hearing on March 17 for the purpose of adjudicating "the Petition to sever Respondent's [Father's] parental rights in the minor child."
On March 17, 1975, the referee held a hearing on the dependency petition. Mother was the only witness who testified at the hearing. Father was unable to travel to Colorado from his new home in Alabama because he was unemployed and had no income; he again appeared only by counsel. Solely on the strength of Mother's testimony that Father had maintained only minimal contacts with S.S.T. and that he had made no child support payments for more than one year, the referee found that S.S.T. was a dependent or neglected child and that a continuation of the parent-child relationship between Father and S.S.T. would not be in her best interests. The referee thereupon entered a written order and decree terminating Father's parental rights in S.S.T., on the face of which the trial court subsequently endorsed its approval.
Father thereafter personally appeared before the referee and moved that the court's order and decree be set aside and that he be granted a rehearing on the petition. The referee, upon her own authority, granted both portions of his motion. The evidence taken by the referee at the rehearing shows that for a period of eighteen months, Father had not made any of the monthly child support payments ordered in conjunction with the decree dissolving his marriage with Mother. For eleven of those months he had a monthly take-home pay of over $900, and he admitted *88 that during this time he could have made the required payments. For the last seven of those months, however, while he was going to school, his income substantially declined, until it consisted almost entirely of unemployment compensation and veteran's educational benefits. No testimony was taken concerning his expenses during this period, but he did state that he wished to support S.S.T. and that he was currently able and willing to pay about $50 per month for that purpose. The record does not reveal whether the referee considered two affidavits setting forth Father's monthly expenses which were attached to his motion for a rehearing.
All other matters were disputed, including the extent to which Father had attempted to maintain contact with S.S.T. and whether Mother had prevented such contact. In the course of the hearing, Father offered testimony concerning psychological therapy that he was receiving. This therapy was partially directed toward improving his relationship with S.S.T. That evidence was rejected as irrelevant by the referee.
On June 18, 1975, the referee found that Father had failed, without excuse, to support S.S.T. for a period of more than one year and also that he had disregarded the order which she had entered on January 21. Hence she ordered that Father's parental rights in S.S.T. be terminated and that S.S.T. be declared a child "available for adoption" pursuant to § 19-4-107(1)(e)(II), C.R.S.1973. None of the findings appear to have been made with a view toward satisfying the statutory criteria which define a dependent or neglected child. See § 19-1-103(20), C.R.S.1973. Furthermore, the referee did not determine whether, under any reasonably foreseeable circumstances, S.S.T.'s welfare would be served by a continuation of her relationship with Father. See People, In re Interest of M.M., 184 Colo. 298, 520 P.2d 128; People, In re Interest of K.S. & M.S., 33 Colo.App. 72, 515 P.2d 130. An order containing the referee's findings and conclusions was signed by the referee and a judge and was filed on June 20.
Father thereafter filed a second motion for rehearing which was argued before a different trial judge from the one who had signed the order. This judge affirmed the findings and order of the referee because "there [was] evidence upon which the findings . . . could be based, and there being evidence it is not for this court on review to weigh evidence but simply to see if there is evidence to support the findings."
We conclude that Mother has here used the dependency petition as a means of making her child available for adoption by her new husband. To permit this would be to ignore both the language and the underlying philosophy of the Children's Code.
In providing for a child found to be dependent or neglected, the focus is the best interests of that child. Johnson v. People, 170 Colo. 137, 459 P.2d 579; People, In re Interest of A.R.S., 31 Colo.App. 268, 502 P.2d 92. In contrast, a stepparent adoption proceeding is not based on a societal responsibility to improve a child's situation. The best interests of the child are only one of the factors to be considered in evaluating a petition in such a proceeding. See Petition of T.C.H., Colo., 545 P.2d 1357.
Furthermore, the power of the state to sever the ties between parent and child should be exercised with extreme care and only when the evidence clearly establishes the necessity of so doing. See People, In re Interest of M.M., supra; People, In re Interest of K.S., supra. A parent-child relationship may not be destroyed and a new one created by adoption solely because an official of the state may believe the child's welfare and the stepparent's convenience will be served by such actions. In re Rinker, 180 Pa.Super. 143, 117 A.2d 780. For these reasons, strict adherence to the statutorily prescribed procedure is necessary. Petition of T.C.H., supra. The stepparent adoption statute, § *89 19-4-107, C.R.S.1973, provides within itself sufficient means and authority to accomplish its purpose, and it may not be supplemented or supplanted by an action in dependency.
From the record it is abundantly clear that the referee in this case was either unaware of, or insensitive to, these considerations. This must necessarily have prejudiced Father's rights in the proceedings below. Nor was this prejudice remedied by either of the judges in this case who, as far as the record discloses, merely ratified the actions of the referee.

I.
In order to conclude that a child is dependent or neglected a court must make one or more of the following findings: (1) That the child's parent, guardian, or legal custodian has abandoned the child (for a period of at least six months, see § 19-3-111(3), C.R.S.1973) or has subjected or allowed others to subject him to mistreatment or abuse; (2) that the child lacks proper parental care through the actions or omissions of the parent, guardian, or legal custodian; (3) that the child's environment is injurious to the child's welfare; (4) that the child's parent, guardian, or legal custodian has failed or refused to provide proper or necessary subsistence, education, medical care, or other care necessary for the child's health, guidance, or well-being; or (5) that the child is homeless, without proper care, or not domiciled with the child's parent, guardian, or legal custodian through no fault of that person. Section 19-1-103(20)(e), C.R.S.1973.
If it is determined that a child is indeed dependent or neglected, the court must then formulate an appropriate decree designed to remedy the child's status or condition. This decree may include one or more of the following provisions: (1) Conditional placement of the child in the legal custody of one or both parents, with or without the court's protective supervision; (2) conditional placement of the child in the legal custody of a relative, guardian, or other suitable person, with or without protective supervision; (3) placement of legal custody for the child in a child care facility; or (4) examination and treatment of the child for physical or psychological disorders. Section 19-3-111(1), C.R.S.1973.
The decree may also terminate all parental rights of one or both parents in the child, but such an order must be based upon a finding of: (1) Severe and continuous neglect by the particular parent whose rights are at issue; (2) a substantial probability of continued deprivation; and (3) a determination that under no reasonable circumstances can the welfare of the child be served by a continuation of the legal relationship of the child with that parent. Section 19-3-111(2), C. R.S.1973. People, In re Interest of M.M., supra; People, In re Interest of K.S., supra.
The statutory criteria for determining whether a child is dependent or neglected clearly demonstrate that, at the adjudicatory stage, it is his status or situation that will determine whether he falls within the provisions of the statute. A proceeding to determine whether a child is, in fact, dependent or neglected is not designed to punish his parent or parents but is merely an attempt to determine if, at the time of adjudication, he does not, for whatever reason, have the benefit of parental guidance, concern, protection or support to which he is entitled. If the court finds that a child does not enjoy these benefits and is thus dependent or neglected it then has the responsibility to use its broad dispositional powers to accomplish those things which will improve the child's situation and remove him from dependent or neglected status. Section 19-3-111, C.R.S. 1973.
In this context, a parent's rights vis a vis a dependent or neglected child may be terminated only as part of a corrective program and then only when the continuation of the parent-child relationship will obstruct the other measures taken *90 by the court for the child's benefit. That the ongoing relationship of parent and child may not presently be a positive factor in the child's environment or development is insufficient, in and of itself, to warrant termination of parental rights in a dependency proceeding. See People, In re Interest of M.M., supra; People, In re Interest of K.S., supra; In re Rinker, supra. To hold otherwise would be to vest in our social agencies a theomorphic power to determine the most appropriate parents for any given child. Hence, it is apparent that a petition in dependency may only be used to correct and improve the situation of the child, and may not be used to punish a parent for his alleged poor behavior by terminating his parental rights. See People, In re Interest of M.M., supra; People, In re Interest of K.S., supra.
By contrast, parental rights may, in effect, be terminated by a declaration made in the course of a stepparent adoption proceeding that a child is "available for adoption." Such a declaration may be obtained and an adoption decree granted upon presentation to the court of the other parent's written and verified consent to the proposed adoption and proof that the parent whose rights are to be foreclosed has abondoned the child for a period of at least one year, or that he has failed, without cause, over the same period of time, to provide the child with reasonable support. Section 19-4-107(1) (e) (II), C.R.S.1973. Buder v. Reynolds, 175 Colo. 28, 486 P.2d 432; C.R.J.P. 35. Rather than being a determination of the child's status, a declaration that a child is "available for adoption" is a legislatively mandated conclusion based upon the policy that a parent may not object to his child's adoption by another person if it is proven that he has failed, without cause, to provide the child with the required care and support. This is true even though the child receives adequate support from other sources. Stjernholm v. Mazaheri, 180 Colo. 352, 506 P.2d 155.
The determination that a child is "available for adoption" is thus only a preliminary step toward the replacement of the child's natural parent with one who appears to be more willing and able to provide the care, support, and training necessary for the child's proper development. Stjernholm v. Mazaheri, supra; Johnson v. Black, 137 Colo. 119, 322 P.2d 99. While a natural parent's rights may not be disregarded, see Allen v. Huffman, 135 Colo. 1, 307 P.2d 802, our expressed public policy declares that a parent seeking to prevent the adoption of his natural child by a stepparent may not stand upon his parental rights without demonstrating a willingness to assume parental obligations. Stjernholm v. Mazaheri, supra.
The same is not true, however, if termination is sought in connection with a petition in dependency, for the reason that a child who is domiciled with the person having legal custody, who is receiving adequate support regardless of the source, and who is not subject to abuse or want of proper direction may not be decreed dependent or neglected. This conclusion follows inescapably from the different reasons for the filing of the two petitions. Where, upon the divorce of a child's parents, custody of that child is awarded to one parent and where the child is subsequently found to be dependent or neglected within the purview of § 19-1-103(20), C. R.S.1973, the cause might rest, at least in part, in the custodial parent. Under such circumstances, termination of his parental rights might be as appropriate a remedy as termination of those of the non-custodial parent. See People, In re Interest of K.S., supra.
Since a petition in dependency concerns different matters and fulfills a different purpose than a proceeding for a stepparent adoption, procedures applicable to one may not be used to accomplish the ends of the other. Accordingly, a petition in dependency may not be converted into a proceeding for stepparent adoption by the actions *91 either of the parties, the referee or the trial court.
The merger of the two actions in the case at bar resulted in errors concerning the adequacy of notice, the admissibility of certain evidence and the sufficiency of the findings and conclusions. We discuss these matters in order to provide guidance in future proceedings.
Notice. A "summons" in juvenile proceedings shall briefly recite the substance of the particular petition giving rise to the proceeding. Section 19-3-103, C.R.S.1973. In the case of a stepparent adoption it is also necessary to provide notice of the nature of the relief sought to the parent whose rights are to be terminated. Section 19-4-107(1)(e)(II), C.R.S. 1973; C.R.J.P. 35. As previously noted, substantial compliance with the statutory provisions is essential and must appear of record. See Storey v. Shumaker, 131 Colo. 131, 279 P.2d 1057.
The purpose of notice is to provide the person served with a reasonable opportunity to prepare to meet the allegations and to present to the court the reasons why the requested relief should be denied. Colorado State Board of Medical Examiners v. Palmer, 157 Colo. 40, 400 P. 2d 914. The determination of what constitutes proper notice depends not only on the statute but on the nature of the proceedings before the court. Public Utilities Comm. v. Colorado Motorway, Inc., 165 Colo. 1, 437 P.2d 44.
In this case, petitions had been filed in both dependency and for stepparent adoption. However, Father received notice only of the former action and of the possibility that it might result in the termination of his parental rights. He received no notice that his parental rights might be terminated pursuant to the petition for stepparent adoption. That the end results might be identical insofar as Father's interests are concerned, does not mean that notice of the dependency or neglect petition is notice of the stepparent adoption proceedings. Obviously, the notice of the stepparent adoption provided to Father by the order terminating his parental rights came too late to satisfy the requirements of due process. Austin v. City and County of Denver, 156 Colo. 180, 397 P.2d 743.
For this reason the referee and the trial court were without authority to adjudicate his rights pursuant to that petition. Fletcher v. District Court, 137 Colo. 143, 322 P.2d 96; Smith v. Aurich, 6 Colo. 388. Their authority to act was established only as to that action of which Father received notice, i.e., the dependency proceeding. The existence as common issues in both actions of abandonment and the potential termination of the father's parental rights is insufficient to justify the referee or court in hearing the petition for stepparent adoption under the guise of considering the petition for dependency. Cf. Johnson v. Black, supra.
Relevancy of Evidence. The legislature has declared its preference for the maintenance of family ties whenever possible. Section 19-1-102(1) (b), C.R.S. 1973. As we have already indicated, in a dependency proceeding the possible rehabilitation of the parent is a matter which must be considered in determining whether the parental relationship should be ended. People, In re Interest of K.S., supra. There can be no question then as to the relevancy of Father's offered testimony that he had been undergoing psychological therapy to improve his relationship with his daughter. This evidence bears directly on the determination of whether S.S.T.'s best interests could be served by a continuation of her relationship with her natural father.
Findings and Conclusions. The relevant findings and conclusions of the referee are that Father failed without cause to provide reasonable support for his daughter and that the child's best interests dictated that his parental rights be terminated. These do not satisfy the prerequisites of § 19-1-103(20), C.R.S.1973, and *92 fall short of the required finding of a history of severe and continuous neglect, conclusion that there exists a substantial probability of future deprivation, and determination that under no reasonable circumstances could S.S.T.'s welfare be served by a continuation of her relationship with Father. People, In re Interest of M.M., supra; People, In re Interest of K.S., supra.

II.
Each of the specific errors discussed above is sufficient to mandate reversal of the decree before us. However, the peculiar manner in which this case was handled compels us to discuss the relative functions of the referee and the trial court under the Children's Code.
The referee is a hearing officer who acts with limited authority under the supervision and direction of a judge and who has no independent power to enter orders or decrees. See Belmont Mining & Milling Co. v. Costigan, 21 Colo. 471, 42 P. 647. The parties have the right to demand that a judge hear the matter in the first instance, and the referee must so advise them. Section 19-1-110, C.R.S. 1973. At the conclusion of any hearing conducted by a referee, he must promptly transmit to the judge all papers relating to the case along with his findings of fact and recommendations as to the disposition of the case. Only if no request for review is filed, and if they are confirmed by judicial order, do the findings and recommendations of the referee become the decree of the court. Section 19-1-110(5), C.R.S. 1973. People, In Interest of J.A.M., 174 Colo. 245, 483 P.2d 362. The parties also have a right to a complete judicial review of any hearing conducted by the referee upon any of the grounds set forth in C.R.C.P. 59, so long as they request that review within five days of the conclusion of the hearing conducted by the referee.
In the instant case, the referee either exceeded her authority or failed to fulfill her duties in each of the following respects: (1) She purported to enter orders and decrees on her own authority; (2) she purported to set aside, on her own authority, orders and decrees entered by the trial court; (3) she failed, at least as shown by the record, to advise the parties, at any of the hearings held in the course of this proceeding, of their right to have a judge hear the issues in the first instance; and, (4) her advice concerning the rights of the parties to judicial review was neither complete nor totally accurate. From the record we are led inescapably to the conclusion that the manner in which the referee performed her duties created the impression that she had the authority to exercise all of the powers conferred upon the court by the Children's Code.
Section 19-1-110, C.R.S.1973, does not outline two separate proceedings, one before the referee and a second before the court, instead it prescribes a single, two-step proceeding in which the question of dependency or neglect is decided. See People, In re Interest of J.A.M., supra. Since the referee's recommendations do not automatically become the order of the court, and since the court may, even upon its own motion, order a rehearing, the final responsibility for the disposition of the case lies in every instance with the trial judge regardless of whether the parties request review. This responsibility may neither be assumed by, nor delegated to, a referee. See Gelfond v. District Court, 180 Colo. 95, 504 P.2d 673.
Accordingly, when the parties allege that the evidence does not support the referee's findings and recommendations and when they request that the court review the record of the hearing before the referee, the judge may not avoid his responsibility by limiting his review to a determination of whether there was any evidence which may support the referee's findings and conclusions.
The findings and order of the referee are reviewable upon the grounds set forth in C.R.C.P. 59. Section 19-1-110(5), C.R. *93 S.1973. Under that rule, the court may subject the proceedings to a complete review, in furtherance of which he is empowered, inter alia, to reconsider the petition, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new order. C.R.C.P. 53(e)(2), which provides that in an action tried without a jury the court shall accept a master's or referee's findings of fact unless clearly erroneous, is inapplicable here because this is a statutory proceeding in which the statute supersedes the conflicting rule. C.R.C.P. 81(a); C.R.J.P. 1. Hence, we hold that the court must draw its own conclusions from the testimony and must independently ascertain how the best interests of the child and of society may most appropriately be served in the case before him. To require less of a trial judge would be to permit him to abdicate the responsibility vested in him by the Children's Code.
The judgment is reversed, and the cause is remanded with directions to vacate the decree and all orders entered previous thereto.
PIERCE and BERMAN, JJ., concur.