641 P.2d 306 (1982)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
In the Interest of M.C.C., A Child, And Concerning R. C., Respondent-Appellant, and
C.C. and A.L., Respondents.
No. 81CA0375.
Colorado Court of Appeals, Div. III.
January 28, 1982.
*307 Patrick R. Mahan, Jefferson County Atty., Gay B. Ummel, Asst. County Atty., Golden, for petitioner-appellee.
Matassa, Dean & Sampson, Carolyn L. Sampson, Wheat Ridge, for respondent-appellant.
KIRSHBAUM, Judge.
Respondent, R. C., appeals the trial court's order terminating the parent-child relationship between him and M.C.C., an infant child. We reverse and remand for further proceedings.
The record reveals the following facts. On October 11, 1979, R. C., his wife, and M.C.C. resided at a motel in Lakewood, Colorado. That evening, R. C. asked the motel manager to babysit. When the manager refused, R. C. and his wife left M.C.C. unattended. The manager reported this incident to police officials, and, upon finding M.C.C. alone in the motel room, police officers removed the child and notified the Jefferson County Department of Social Services (the Department). A caseworker observed that the infant had bruises on his buttocks, leg, elbow, and chest; that he suffered from a severe diaper rash; that he was underweight; and that the hair on the back of his head was thin. The caseworker concluded the child's thin hair was a result of prolonged periods of lying in one position.
At a dependency hearing held October 15, 1979, the Department was awarded temporary custody of M.C.C. During the next two weeks, R. C. visited the child twice. He then departed for California without notifying the Department. In November 1979, R. C. was arrested and imprisoned several times in California, and in December 1979, he was extradited to Wisconsin where he remained incarcerated during the proceedings involved in this case.
On February 1, 1980, R. C. sent a letter to an assistant county attorney in Jefferson County, Colorado, informing her of his whereabouts since late October 1979; of his reasons for failing to appear at a hearing on alleged criminal child abuse and neglect related to the circumstances of this case; and of his desire to attend a dependency and neglect hearing on February 8, 1980, regarding M.C.C. R. C. did not attend the February 8 hearing, and at its conclusion M.C.C. was adjudicated neglected and dependent as to R. C.
On August 11, 1980, R. C. sent another letter to the same assistant county attorney, expressing concern for M.C.C.'s well-being. The letter requested that either R. C.'s mother or his sister be given legal custody of the child. Subsequent investigation revealed that neither of those relatives was willing to care for M.C.C.
In September 1980, R. C., through his court-appointed attorney, asked the Department and the trial court to adopt a treatment plan for the purpose of maintaining and nurturing the relationship between R. *308 C. and M.C.C. The court and the Department refused to adopt a treatment plan. On February 24, 1981, the trial court terminated the parent-child legal relationship between R. C. and M.C.C.
R. C. contends that the legal relationship between him and M.C.C. was erroneously terminated because the trial court failed to apply the appropriate statutory standards for termination of parental rights. We agree.
The termination of parental rights is a decision of paramount gravity, and the state must exercise extreme caution in terminating such rights. People in Interest of E. A., Colo., 638 P.2d 278 (1981); People in Interest of B.J.D., Colo.App., 626 P.2d 727 (1981); see generally Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Hence, strict compliance by the trial court with the appropriate standards for termination of a parent-child relationship is an absolute necessity. People in Interest of E. A., supra; In re Petition of F.J.H., Colo.App., 628 P.2d 159 (1981). A trial court must adequately address and resolve each specific requirement for termination. People in Interest of E. A., supra. Such detailed resolution of all issues essential to a decree of termination substantially lessens the risk that a parent-child relationship will be severed erroneously.
Section 19-11-105, C.R.S.1973 (1978 Repl.Vol. 8) of the Parent-Child Legal Relationship Termination Act of 1977 authorizes a trial court to terminate the legal relationship between a parent and the parent's child only if one of two sets of circumstances is found to exist. If a child has been adjudicated neglected because the child has been abandoned by the parent, termination is permitted if the trial court additionally finds that the parent's identity is unknown or that
"the parent or parents having custody have surrendered physical custody for a period of six months and during this period have not manifested to the child or the person having physical custody a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child ...." Section 19-3-111(3)(a), C.R.S.1973 (1981 Cum.Supp.).
A trial court may also terminate parental rights if it finds that a child has been adjudicated dependent or neglected on any ground and that, in addition, all of the following facts exist:
"(I) That an appropriate treatment plan approved by the court has not been reasonably complied with by the parent or parents or has not been successful;
(II) That the parent is unfit;
(III) That the conduct or condition of the parent or parents is unlikely to change within a reasonable time." Section 19-11-105(1)(b), C.R.S.1973 (1978 Repl.Vol. 8).
The trial court here purported to terminate the parent-child relationship between R. C. and M.C.C. pursuant to § 19-11-105(1)(b), C.R.S.1973 (1978 Repl.Vol. 8). We conclude that the findings of the trial court are not sufficient to sustain its order on the basis of this statute.
In § 19-11-105(1)(b)(I), C.R.S.1973 (1978 Repl.Vol. 8), the General Assembly has required that before the legal relationship between a parent and a dependent or neglected child may be terminated in Colorado, the court must find that an "appropriate" treatment plan previously approved by the court has not been successful or has not been reasonably complied with by the parent. Contrary to the People's argument, the requirement of an "appropriate" plan does not signify a legislative intent to permit the termination of a parent-child relationship without formulating any treatment plan. Such interpretation would allow courts to create exceptions to the General Assembly's express requirement whenever it appears that no treatment plan could be negotiated successfully by a particular parent. We find no indication of any intent by the General Assembly to so undermine the policy of § 19-11-105(1)(b)(I), C.R.S.1973 (1978 Repl.Vol. 8) of permitting any parent *309 of a child already adjudicated dependent or neglected to demonstrate both willingness and ability to remain that child's parent.
The fact that a particular parent is incarcerated at the time of an adjudication of dependency or neglect may often render more difficult the crafting of a meaningful and workable plan. However, such single circumstance does not per se prohibit the creation and implementation of a treatment program appropriate for the goal the General Assembly has indicated it should achievethe building or re-building of a healthy parent-child relationship. See Diernfeld v. People, 137 Colo. 238, 323 P.2d 628 (1958); People in Interest of B.J.D., supra; see also In re Welfare of Staat, 287 Minn. 501, 178 N.W.2d 709 (1970); In re Adoption of McCray, 460 Pa. 210, 331 A.2d 652 (1975). Such factors as the age of the child, the length of the parent's incarceration, the nature of the parent's criminal conduct, and all the circumstances of the prior parent-child relationship are also among the matters which might be considered by a trial court when formulating a treatment plan.
It may be, as the People's argument suggests, that the single fact of incarceration should render a person ineligible to continue to be the parent of such person's child. If so, such a fundamental public policy determination should be articulated by the General Assembly in terms far more certain than the requirement that judicially approved treatment plans be appropriate to the peculiar circumstances of particular cases.
Here, the trial court refused to approve or adopt any treatment plan. Its general conclusions suggest that R. C.'s criminal activities and incarceration caused him to be "unavailable" for the implementation of an appropriate plan. The trial court's findings in this regard are not sufficiently detailed to apprise us of the reasons for its conclusion that R. C. was not available for any type of plan, and we are unable to determine if the trial court's findings are supported by the evidence or if it correctly applied the law. Hence, we remand the cause to the trial court for reconsideration of the evidence in light of § 19-11-105(1)(b), C.R.S.1973 (1978 Repl.Vol. 8), and for more detailed findings. See Platte Valley Bank v. B & J Construction, Inc., Colo.App., 606 P.2d 455 (1980); Young v. Golden State Bank, 41 Colo.App. 480, 589 P.2d 1381 (1978). In the event further evidence is required, the trial court is authorized to conduct further evidentiary proceedings concerning the crafting of a suitable treatment plan in light of the present circumstances of the affected parties.
The trial court also based its termination order in part upon a finding that R. C.'s continued involvement in criminal activities and his resulting incarceration constituted "constructive abandonment" of M.C.C. The General Assembly has not provided for the termination of parental rights on the ground of "constructive" abandonment. Moreover, the trial court's findings do not address all of the requirements of § 19-3-111(3)(a), C.R.S.1973 (1981 Cum.Supp.). Hence, we remand the cause for a determination of whether all of the criteria contained in that statute have been satisfied in this case. See Platte Valley Bank v. B & J Construction, Inc., supra. We note that, contrary to R. C.'s assertion, a finding of abandonment need not be precluded merely because the initial separation of R. C. and M.C.C. resulted from a police hold and court order. See, e.g., In Re Maxwell, 117 Cal.App.2d 156, 255 P.2d 87 (1953); State v. Doe, 117 N.H. 562, 374 A.2d 1186 (1977).
The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.
STERNBERG and TURSI, JJ., concur.