[1] This is an appeal from an order of the district court terminating the parent-child relationship between Mr. and Mrs. I. and their daughters, C.I. and M.I., pursuant to § 19-11-105, C.R.S. (1978 Repl. Vol. 8). The parents' principal contentions of error are that the evidence relied on by the trial court was too remote in time to support the judgment, and that the evidence presented was insufficient to support the termination. We reverse.
[2] Mr. and Mrs. I. are the natural parents of C.I. and M.I. Mrs. I. must take medication daily to control a seizure disorder, and her use or abuse of prescription medication is the primary issue of this case. The medications she takes, dilantin and phenobarbital, result in her sometimes appearing to be intoxicated, in having difficulty preparing meals for the family, in cleaning the house, and in getting C.I. to school.
[3] As a result of some of these problems, the children were first taken from the home in July of 1982, and a petition in dependency and neglect was filed a month later. In September of 1982, an adjudicatory order was entered after the parents admitted that the children's environment was injurious to their welfare. The children were allowed to return to their parents' home subject, however, to certain stipulations regarding the mother's medication, family therapy, unscheduled visits by the department of social services, and other similar matters. The children were again removed from the home in November of 1982, following a minor traffic accident that occurred when the mother drove C.I. a few blocks to her school and left M.I. at home alone.
[4] Thereafter, the family was evaluated by physicians and psychologists, and the department of social services instituted an action to terminate the parental relationship. However, at a pretrial conference in September of 1983, it was agreed that the children would again be returned to the parents' home subject to certain terms and conditions. One of the conditions was that a full-time housekeeper be employed to ensure that the mother would not be the only adult present when the father was at work or for other reasons not at home.
[5] On Thanksgiving day, at 1:00 a.m., after the department of social services had determined that the housekeeper was not in the home, and that Mrs. I. had admitted taking certain unspecified drugs from the office of one of her doctors, the children were removed from the home with the assistance of a uniformed police officer and a social services caseworker. Subsequently, the department of social services again moved for termination of the parent-child relationship. Trial on this issue began in May of 1984, and the parent-child legal relationship was terminated in June of 1984.
[6] We agree with the parents that the evidence presented in this case is insufficient to support a termination of the parent-child relationship.
[7] Because of the fundamental importance of the parent-child legal relationship, the grounds for termination must be established by clear and convincing evidence. People in Interest of M.S.H., 656 P.2d 1294 (Colo. 1983); People in Interest of A.M.D., 648 P.2d 625 (Colo. 1982). The grounds for the termination relied upon here were that the children were adjudicated, by stipulation, as dependent and neglected, that the appropriate treatment plan was not reasonably complied with, that the parents were unfit, and that the conduct or condition of the parents was unlikely to change within a reasonable time. Section 19-11-105(1)(b), C.R.S. (1978 Repl. Vol. 8).
[8] The trial court's finding that Mrs. I.'s condition was of such duration and nature as to render her unlikely, within a reasonable time, to provide reasonable care for the children is not supported by the evidence. At the termination hearing, the *Page 1185 
People presented evaluations of Mrs. I. which were based on interviews which had taken place in early 1983, approximately a year before the current trial. In contrast, the parents presented testimony from the family physician, Mrs. I.'s primary physician, who was treating her throughout this entire period. He testified as to favorable changes in Mrs. I's condition, and that, despite her past history of begging him for more prescription drugs, she had not done so since the hospitalization in December 1983.
[9] He further speculated that these proceedings "may have gotten her attention enough to change her way of thinking." This doctor also testified that he disagreed with another doctor's report of August and September 1983, and stated that he would "suspect" that if that report were redone on a current basis, it would "come out differently." Finally, he testified that in his opinion, Mr. and Mrs. I. were fit parents to have custody of their children.
[10] This evidence that the parents' condition had changed was not refuted, and consequently, the termination was based on incidents and reports which happened well before the mother's apparent improvement. Under these circumstances, we conclude that the trial court's ruling regarding the continuing nature of the parents' unfitness as parents is not supported by clear and convincing evidence. See People in Interest of B.J.D.,626 P.2d 727 (Colo.App. 1981).
[11] We also agree that the People did not establish by clear and convincing evidence that at the time the children were removed from the parents' home on Thanksgiving morning, the treatment plan had not been reasonably complied with, or was unsuccessful. The chief criterion for judging the success of a treatment plan is whether it corrects or improves the original conduct or condition which led to intervention by the state.See People in Interest of L.D., 671 P.2d 940 (Colo. 1983); People inInterest of C.A.K., 652 P.2d 603 (Colo. 1982). The parents are not required to comply absolutely with every provision of a treatment plan, and a dependency and neglect petition and subsequent termination should not be devised as punishment for failure to comply completely with the plan, but rather as a device to correct the problem within the family. See People inInterest of S.S.T., 38 Colo. App. 110, 553 P.2d 82 (1976).
[12] In this case, Mrs. I.'s purported drug abuse and her inability to care adequately for the children by herself caused the state intervention. The treatment plan therefore required that Mrs. I. attempt to control her use of drugs, and that the I.'s employ a full-time live-in housekeeper.
[13] No evidence was presented that, at the time the children were removed from the home, Mrs. I. was in an intoxicated state, or was otherwise unable to care for the children, that another adult was not present or would not be present throughout the Thanksgiving weekend, or that the children were in any danger. Rather, it appears that the primary reasons the children were taken were that the department of social services had learned the housekeeper was not present in the home, and that Mrs. I. had at some point admitted taking some drugs from her doctor's office.
[14] However, the reason for the housekeeper's absence, and the length and permanence of her absence, was disputed, as was the purpose and result of the taking of drugs. Indeed, the trial court made no finding on the parents' explanation that the housekeeper's absence from the home was of short duration caused by an automobile accident. Under these circumstances, the evidence is insufficient to sustain a finding that the treatment plan was not reasonably complied with, or that it was unsuccessful. Thus, we conclude that the People did not meet their burden of proving by clear and convincing evidence that there were grounds for termination of the parent-child relationship under the statute.
[15] Accordingly, terminating the parent-child relationship is reversed, and the cause is remanded for further proceedings with the views expressed herein. *Page 1186 
[16] JUDGE VAN CISE concurs.
[17] JUDGE PIERCE dissents.