## No. 79SA217

### The People of the State of Colorado, In the Interest of H.A.C., a child v. D.C.C.

(599 P.2d 881)

Decided August 20, 1979.    Opinion modified and as modified rehearing denied September 17, 1979.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Edward G. Donovan, Solicitor General, Susan P. Mele-Sernovitz, Assistant Attorney General, for petitioner-appellee.

Richard M. Borchers, for respondent-appellant.

*En Banc.*

JUSTICE GROVES delivered the opinion of the Court.

The district court terminated the appellant's parental relationship with her daughter. Section 19-3-111(2)(a), C.R.S. 1973. Appellant contests the termination order on several grounds. First, she claims that there was insufficient evidence in the record to support the court's order because alternatives to termination were not evaluated. Second, she argues that the district judge erred by refusing to disqualify himself. Finally, she contends that the district court erroneously ruled that section 19-11-101, *et seq.*, C.R.S. 1973 did not apply. We affirm the ruling of the district court.

In February, 1976, neighbors told police that a child had been crying and apparently left unattended in a nearby apartment for several hours. After investigation, H.A.C. (hereinafter, "the child") was taken into protective custody and placed in a foster home. The following month the district court ordered that the child be returned to appellant, but that custody remain in the Adams County Department of Social Services (ACDSS). In October, 1976, appellant voluntarily sought assistance from ACDSS, including foster care for the child. The district court in February, 1977,

approved the foster care arrangement and the social worker's recommendation regarding counseling for appellant. At a review hearing in August, 1977, the district court ordered that foster care continue and scheduled a termination hearing. An interim hearing was held in March, 1978. On August 4, 1978, after a hearing, the district court ordered respondent's parental rights terminated.

## I.

■ Appellant's first allegation of error is that the district court did not assess the feasibility of less drastic alternatives before entering the termination order. Appellant correctly states the applicable law which requires the court to ascertain that conditions resulting in the original neglect most probably will continue and to "explore and specifically eliminate alternative remedies." *In re People in Interest of M.M.*, 188 Colo. 199, 533 P.2d 913 (1975).

■ Here the record indicates that the district court made appropriate findings before issuing its order. A psychologist who had examined both appellant and the child testified that appellant suffered from significant personality problems which seriously affected her abilities as a parent. He also testified that, although it was possible that the appellant might improve with long term therapy, the child's emotional growth and ability to interact with others would have been irreparably hindered by the time such improvement in appellant could be achieved. Testimony by social workers and the foster mother corroborated the psychologist's conclusions. Thus there was ample evidence that the condition which led to the original neglect would continue.

In addition, the district court considered other alternatives less drastic than termination. In particular, the court contemplated continuing the foster placement to provide appellant additional time in which to improve her abilities as a parent, and to demonstrate her willingness to assume full responsibility for the child's care. However, testimony showed that such an alternative was not advisable.

Witnesses outlined treatment plans which appellant either did not follow or did not complete. Included was a plan with ACDSS which oulined specific efforts and improvements as prerequisites to the child's return to appellant. Although the terms were never fully met, ACDSS had moved for a continuance of the termination hearing to provide appellant more time in which to comply when she demonstrated some willingness to assume responsibility by completing a child development course. ACDSS also formulated a plan for returning the child to appellant after a series of transitional visits. Without explanation or advance warning, the appellant failed to appear for the final visit, causing the child great distress. Testimony established that the appellant's inability to complete plans and to exhibit some initiative to regain custody had not changed during the year and a half the child was in foster care. Testimony also strongly suggested

that there was a great risk to the child's psychological development if she were required to remain in the confusing limbo created by the presence of two mother figures.

## II.

■ The second contention is that the judge should not have presided at the termination hearing. Appellant argues that the judge's participation in various hearings regarding custody beginning in February, 1977, had prejudiced him against her. However, appellant fails to direct our attention to any evidence of prejudice, except that in March, 1978, the court had reduced appellant's visitation rights. Our review of the record does not reveal any bias. Rather it shows that the evidence provided a proper basis for termination. The fact that the judge was familiar with appellant's previous derelictions does not require that he disqualify himself, absent some additional showing of bias. Even assuming that the March ruling was erroneous such error would not suffice in itself to prove bias. *Saucerman v. Saucerman,* 170 Colo. 318, 461 P.2d 18 (1969).

## III.

■ Appellant finally argues that the district court erred in ruling that section 19-11-101, *et seq.,* C.R.S. 1973 (now in 1978 Repl. Vol. 8) did not govern the proceedings. The General Assembly provided that such statutes would apply to petitions requesting termination of a parent-child relationship on or after July 1, 1977. Appellant claims that since the first discussion of termination appeared in a social worker's report of August 1, 1977, these statutes are applicable. We disagree.

The General Assembly provided that the statutes would apply to petitions filed on or after July 1, 1977, and sections 19-3-101 and 19-3-102, C.R.S. 1973 make it clear that "petition" signifies the initial pleading of dependency or neglect requesting the court to take jurisdiction. Here the petition was filed in February, 1976, the time when appellant voluntarily relinquished custody. Consequently, the district court correctly concluded that section 19-11-101, *et seq.,* C.R.S. 1973 did not govern. Rather, section 19-3-111, C.R.S. 1973 applied.

Section 19-3-111(2)(a), C.R.S. 1973, pursuant to which the district court acted, permits termination of parental rights after a child has been adjudicated dependent and neglected "when . . . [the court] finds that the best interests and welfare of the child so require."

Section 19-11-101, *et seq.,* C.R.S. 1973 (now in 1978 Repl. Vol. 8) set forth more detailed criteria upon which to base an order terminating parental rights. In particular, section 19-11-105, C.R.S. 1973 (now in 1978 Repl. Vol. 8) provides in pertinent part:

"(1) The court may order a termination of the parent-child legal relationship upon the finding of . . . the following:

. . . .

"(b)  That the child is adjudicated dependent or neglected and all of the following exist:

"(I)  That an appropriate treatment plan approved by the court has not been reasonably complied with by the parent or parents or has not been successful;

"(II)  That the parent is unfit;

"(III)  That the conduct or condition of the parent or parents is unlikely to change within a reasonable time.

"(2)  In determining unfitness, conduct, or condition, the court shall find that . . . the conduct or condition of the parent or parents renders the parent or parents unable or unwilling to give the child reasonable parental care. In making such determinations, the court shall consider, but not be limited to, the following:

"(a)  Emotional illness, mental illness, or mental deficiency of the parent of such duration or nature as to render the parent unlikely within a reasonable time to care for the ongoing physical, mental, and emotional needs of the child;

. . .

"(i)  Reasonable efforts by child-caring agencies which have been unable to rehabilitate the parent or parents.

"(3)  In considering any of the factors in subsection (2) of this section in terminating the parent-child legal relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child. . . ."

Appellant claims she was prejudiced by the district court's failure to apply the above criteria. However, although the district court ruled that the above provisions did not govern, it nonetheless applied the criteria set forth therein. In particular, the district court made the findings required by section 19-11-105(1)(b), C.R.S. 1973 after considering the factors enumerated in section 19-11-105(2)(a), (f) and (i), C.R.S. 1973. Appellant's claim of prejudice is without foundation.

■  Appellant also contends that she did not receive adequate notice of the factual bases of the People's request for termination. The record does not substantiate this claim. Appellant received advice of counsel prior to confessing the petition for dependency and neglect in February, 1977. She entered into a contract with ACDSS which clearly delineated the goals which were prerequisites to a return of the child. She also had the benefit of counsel who had access to psychological evaluations and social service reports upon which the People relied in the termination proceeding. Thus, it appears that appellant received adequate notice of the facts argued by the People at the termination proceeding.

### IV.

We also find appellant's other allegations of error to be without merit.

Judgment affirmed.