**The PEOPLE of the State of Colorado, Petitioner-Appellee.**

**In the Interest of C. S., a child, and concerning E. S., Respondent-Appellant.**

**No. 80SA217.**

Supreme Court of Colorado, En Banc.

July 7, 1980.

Jerome V. Porter, Dennis Green, Pueblo, for petitioner-appellee.

Joseph J. Lenihan, Pueblo, Guardian ad litem for C. S., a Child.

John B. Shanley, Pueblo, for respondent-appellant.

ROVIRA, Justice.

The appellant, E. S., appeals an order of the Pueblo County District Court which terminated his parental rights with respect to his minor daughter, C. S. The appeal was transferred to this court pursuant to sections 13–4–102(1)(b) and 13–4–110(1)(a), C.R.S.1973. We affirm the order of the district court.

C. S. was born on August 21, 1970. Beginning in February 1972, the Pueblo County Department of Social Welfare (department) started working with M. S., the mother of C. S., to assist her in providing proper care for C. S. In July 1972, with the consent of her mother, C. S. was placed in a foster home. On June 4, 1973, after unsuccessful attempts to improve M. S.'s ability to care for her child, a "Petition in Dependency or Neglect" was filed in the district court, naming as respondents M. S. and E. S., the father of C. S. The petition alleged that C. S. lacked proper parental care, that C. S. was abandoned, and that her parents failed to provide proper sustenance and care necessary for her well-being. The petition and summons which were served on M. S. and E. S. advised them that termination of parental rights was a possible remedy.

On September 17, 1973, the district court determined that C. S. was a "dependent or neglected child" within the meaning of sec-

tion 19–1–103(20), C.R.S.1973 (1978 Repl. Vol. 8), and ordered the department to continue to work with the family.

C. S. continued to live in a foster home until December 1974, when, after a further review of the dispositional order, the court returned C. S. to the custody of M. S. and E. S.

In May 1977, after considering a current report on the family situation, the court ordered M. S. and E. S. to undergo an examination at the Comprehensive Alcoholic Treatment Center, and an examination by a psychiatrist or psychologist to determine their parental abilities. C. S. was also ordered to be "psychiatrically or psychologically examined."

C. S.'s mother, M. S., died on August 1, 1977. On September 28, 1977, with E. S.'s consent, C. S. was again placed in the custody of the department. The department, in turn, placed C. S. in the physical custody of her paternal uncle and aunt. E. S. was granted visitation rights, and the department was ordered to present a permanent plan for the placement of C. S. In February 1978, the trial court ordered that both E. S. and C. S. be evaluated to determine the possibility of reuniting the child and her father. In May 1978, at a dispositional review hearing, the trial court·continued its previous order that the legal custody of the child should remain with the department, that C. S. should remain with the paternal uncle and aunt, and that E. S. should have reasonable rights of visitation.

Although the placement of C. S. with her uncle and aunt was initially satisfactory, it eventually failed because of a dispute as to the scope of E. S.'s visitation rights, and, once again, C. S. was placed in a foster home. On June 26, 1978, the People requested the district court to terminate the parent-child relationship between E. S. and C. S.

A termination hearing was held on October 6, 1978. The People presented the testimony of four witnesses: a clinical psycholo-

gist, a child psychiatrist, and two caseworkers employed by the department. The witnesses were unanimous in recommending that the parent-child relationship be terminated. Their uncontroverted testimony established that E. S. was a chronic alcoholic whose drinking had resulted in irreversible brain damage. The witnesses agreed, and E. S. does not dispute, that E. S. is incapable of exercising the judgment required of a custodial parent.

In addition, each witness expressed the opinion that long-term foster care, with visitation rights in E. S., would not be an adequate alternative to the termination of E. S.'s parental rights and the adoption of C. S. into a stable and consistent family environment. The clinical psychologist and the child psychiatrist specifically stated that E. S. could not reasonably be expected to cooperate in a program of controlled visitation within the context of long-term foster care, and that such an arrangement would be unlikely to provide C. S. with the adult role models essential for her well-being.

E. S. presented no evidence at the termination hearing.

On May 17, 1979, the district court entered an order terminating the parent-child relationship between E. S. and C. S. and placing C. S. with the department for purposes of adoption. E. S. appeals from that order.

## I.

Because the department's original petition alleging that C. S. was a "dependent or neglected child" was filed prior to July 1, 1977, the termination of E. S.'s parental rights is governed by section 19–3–111(2)(a), C.R.S.1973. *People in the Interest of H. A. C. v. D. C. C.*, Colo., 599 P.2d 881 (1979).

## II.

The standard for termination of parental rights established by section 19–3–

111(2)(a), C.R.S.1973, is the "best interests and welfare of the child." This standard is met only when it is shown that: (1) there has been a history of severe and continuous neglect by the parent whose rights are sought to be terminated; (2) there is a substantial probability of future deprivation; and (3) under no reasonable circumstances can the welfare of the child be served by a continuation of the legal relationship of the child with the parent. *People in the Interest of M. M.*, 184 Colo. 298, 520 P.2d 128 (1974). The court must "explore and specifically eliminate" alternatives to the termination of parental rights. *Id.; People in the Interest of H. A. C. v. D. C. C., supra.*

■ Although the district court's May 17, 1979, order is not phrased in the precise language of appellate decisions construing section 19–3–111(2)(a), *People in the Interest of C. R.*, 38 Colo.App. 252, 557 P.2d 1225 (1976), it nonetheless includes the findings required by *People in the Interest of M. M., supra.* On the basis of competent evidence in the record, the district court found that, in 1973, C. S. had been determined to be a "dependent or neglected child"; that E. S.'s neglect of his daughter had continued since that time; that "[t]he emotional, physical, and mental health of the child is such that unless a healthy home atmosphere can be given to the child, it is likely the child will have further injury to her physical, mental, and emotional needs in the future"; and that "the conduct and condition of the parent is unlikely to change within a reasonable period of time."

■ Further, it is apparent that the district court considered alternatives less drastic than termination of E. S.'s parental rights. As noted *supra* in this opinion, the testimony before the court dealt extensively with E. S.'s proposal for the placement of C. S. in long-term foster care with visitation rights in E. S. The People's witnesses were unanimous in stating that the proposal would not be in C. S.'s best interests. The

district court's order terminating E. S.'s parental rights can only be read as an implicit ratification of this uncontroverted testimony. In our view, no useful purpose would be served by remanding this case for entry by the district court of a specific finding to the effect that it had considered and rejected the proposed alternative to the termination of the parent-child relationship. *Cf. People in the Interest of H. A. C. v. D. C. C., supra.*

### III.

E. S. argues that the standard set forth in section 19–3–111(2)(a) is unconstitutionally vague and overbroad. We disagree.

■ As construed by applicable decisions of this court, section 19–3–111(2)(a) provides a standard which the average intelligent parent can understand and from which he can regulate his conduct. "Fundamental fairness does not require a statute to enumerate in all-encompassing examples, or exactly described acts, precisely how poorly a parent can treat a child before risking loss of parental rights." *People in the Interest of D. A. K.*, Colo., 596 P.2d 747, 751 (1979), *appeal dismissed*, 444 U.S. 987, 100 S.Ct. 515, 62 L.Ed.2d 416 (1979). *Cf. People in the Interest of V. A. E. Y. H. D.*, Colo., 605 P.2d 916 (1980).

### IV.

The department, the court, and the social agencies in Pueblo have been involved with C. S. and her family for the past eight years. The time has come for this child to be given the opportunity to be adopted by a family who can provide the love, security, care, and stable environment that she needs.

In view of the uncontroverted evidence of E. S.'s history of alcoholism and the resultant brain damage, we find it unnecessary to consider E. S.'s challenge to the district court's finding that "he has failed to comply with or follow any of the recommendations

of the Court, or the Department of Social Services to cure the illness of alcoholism."

Judgment affirmed.

DUBOFSKY and QUINN, JJ., dissent.

QUINN, Justice, dissenting:

The trial court's failure to specifically eliminate long-term foster care as a less drastic alternative to termination compels me to respectfully dissent. Even accepting the majority's interpretation of the decree as an *implicit* determination that this alternative was inappropriate, the relationship at stake here is too basic and fundamental to allow its termination to rest on anything less substantial than an *explicit* determination of record that under no reasonable circumstances can the welfare of the child be served by the less drastic alternative. The requirement of explicitness is particularly appropriate in this case, since long-term foster care was the competing alternative proposed to the trial court.

The rights severed in this case are of the first order and find protection in both the due process and equal protection clauses of the Fourteenth Amendment. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Overturf v. District Court of 20th Judicial District*, Colo., 602 P.2d 850 (1979). Termination of parental rights "severs permanently not only the rights . . . of the parent relative to the child, but those of the child as well," such as the right to support and inheritance. *People in the Interest of K. S. and M. S.*, 33 Colo.App. 72, 76, 515 P.2d 130, 132–33 (1973). Because of the awesome finality attaching to a decree of termination, we have wisely and consistently required that the trial court explore and *specifically* eliminate less drastic alternatives. *E. g., People in the Interest of H. A. C. v. D. C. C.*, Colo., 599 P.2d 881 (1979); *People in the Interest of M. M.*, 184 Colo. 298, 520 P.2d 128 (1974); *People in the Interest of K. S. and M. S., supra.* I would impose that requirement in this case and would remand for specific findings in that regard.

I am authorized to say that DUBOFSKY, J., joins me in the dissent.