*People v. Anderson*, 659 P.2d 1385 (Colo. 1983), and *People v. Freiman*, 657 P.2d 452 (Colo.1983), which defendant claims support his position, are inapposite. In *Freiman*, the issue had been decided on the merits. *Anderson* does not relate to collateral estoppel; instead, it concerns the necessity to appeal a judgment of dismissal.

Judgment affirmed.

PIERCE and BERMAN, JJ., concur.

The **PEOPLE of the State of Colorado**, Petitioner-Appellee, In the INTEREST OF C.L.S. and C.A.S., Children,

**And Concerning,**

**R.L.S. and S.A.(H.)S., Respondents-Appellants.**

No. 84CA1223.

Colorado Court of Appeals, Div. I.

June 27, 1985.

Rehearing Denied July 25, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Asst. Atty. Gen., Denver, for petitioner-appellee.

John L. Baker, Granby, guardian ad litem for the children.

Steven A. Gall, Hot Sulphur Springs, for respondents-appellants.

PIERCE, Judge.

R.L.S. and S.A.(H.)S. (the parents) appeal from the trial court order terminating their parent-child legal relationship with C.L.S. and C.A.S., their minor children. We reverse.

In August 1983, after having received a report that C.L.S. and C.A.S. were abused and neglected, a caseworker for the Grand County Department of Social Services (department), with the aid of the sheriff's department, removed the children from the home. On the following day, the trial court granted the People's motion giving temporary custody of the children to the department. The People then filed petitions in dependency and neglect with respect to each child.

Shortly thereafter, the parents moved to Adams County where they had resided prior to moving to Grand County. On September 29, 1983, after several continuances at the parents' behest, a hearing was held during which they admitted the allegations of the dependency and neglect petitions, with the exceptions of those allegations pertaining to termination of the parent-child legal relationship. The trial court accepted the parents' admissions, and approved a treatment plan recommended by the department and agreed upon by the parents.

The treatment plan required the parents to (1) develop homemaking skills and provide a clean, safe, and healthy home environment for the children prior to consideration of the children's return to the home; (2) attend and bear the cost of parenting classes which addressed issues concerning realistic expectations of children at various stages of development; (3) attend and bear

the cost of individual counselling sessions which addressed anger and frustration; and (4) contact the department for supervised visitation with the children. In addition, the parties orally agreed that the children would be gradually integrated into the parents' custody.

In November and December 1983, the parents sought and were denied overnight visitation with their children. The trial court denied the requested visitations because the parents had not established a clean, safe home environment, and because the visits could not be supervised by the department in that they were for holiday periods.

Thereafter, the parents moved to withdraw their admission to the allegations contained in the dependency and neglect petitions. As grounds therefor, the parents asserted that the department had not integrated the children into their home, and therefore, they had not received the benefit of their agreement to admit the allegations of the petitions. This motion was denied following hearing.

On May 17, 1984, the trial court granted the People's motion to amend the petitions in dependency and neglect to request termination of the parent-child legal relationship. The People did not file an amended motion until June 14, 1984. This motion, which was denominated "Amended Motion for Termination of Parental Rights," set forth the factual grounds for termination for the first time. The termination hearing, which had been previously set, remained scheduled for July 5, 1984.

The parents sought a continuance of the termination hearing alleging, among other things, that the People had failed to file the motion for termination thirty days prior to the scheduled hearing. Following argument, the trial court denied the parents' motion for continuance, and the termination hearing was commenced. On August 17, 1984, following completion of the hearing, the trial court terminated the parents' parent-child legal relationship pursuant to § 19–11–105(1)(b), C.R.S. (1978 Repl. Vol. 8). The parents appeal, asserting numerous contentions of error.

## I.

We agree with the parents' contention that the trial court committed reversible error by commencing the termination hearing within thirty days of the written motion for termination.

Section 19–11–103(1), C.R.S. (1978 Repl. Vol. 8) provides:

"Termination of a parent-child legal relationship shall be considered only after the filing of a written motion alleging the factual grounds for termination, and termination of a parent-child legal relationship shall be considered at a separate hearing following an adjudication of a child as dependent or neglected. *Such motion shall be filed at least thirty days before such hearing.*" (emphasis added)

Asserting that this provision is only a notice requirement, the People argue that the granting of their motion to amend the petitions gave respondents more than thirty days notice of their intent to terminate the parents' parental rights and constituted substantial compliance with the notice requirement of the statute. We disagree.

■ Termination of the parent-child legal relationship is a drastic remedy, *People in Interest of Baby Girl D.*, 44 Colo.App. 192, 610 P.2d 1086 (1980), which affects a parent's fundamental liberty interest. *See Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *People in Interest of E.A.*, 638 P.2d 278 (Colo. 1982).

■ In view of this concept, the General Assembly has imposed various conditions which must be satisfied before entry of a judgment terminating the parent-child legal relationship. *People in Interest of Baby Girl D., supra.* By using the word "shall," the General Assembly has made these requirements mandatory, and total failure to satisfy them cannot constitute substantial compliance. *People in Interest*

*of Baby Girl D., supra; People in Interest of J.B.,* 702 P.2d 753 (Colo.App.1985).

■ Accordingly, the People's failure to file a written motion setting forth the factual grounds for termination at least thirty days prior to hearing thereon cannot constitute substantial compliance with § 19–11–103(1), C.R.S. (1978 Repl.Vol. 8). *See People in Interest of Baby Girl D., supra; People in Interest of J.B., supra. Cf People in Interest of E.A., supra; People in Interest of H.A.C.,* 198 Colo. 260, 599 P.2d 881 (1979); *Johnson v. People,* 170 Colo. 137, 459 P.2d 579 (1969) (all of which were decided prior to the effective date of § 19–11–101, et seq., C.R.S. (1978 Rep.Vol. 8) ).

## II.

Because several of the parents' remaining contentions of error are likely to arise on remand, we will discuss them here.

## A.

■ The parents contend that prior to termination of their parent-child legal relationship, their children had not been adjudicated dependent or neglected. The record belies this contention, displaying the parents' admissions to the allegations of dependency and neglect contained in the petition, together with the trial court's acceptance thereof and entry of an order reflecting the same. *See People in Interest of C.A.K.,* 652 P.2d 603 (Colo.1982).

## B.

■ Arguing that they were denied the benefit of their agreement to admit the allegations of the dependency and neglect petitions because the children had not been integrated into their custody, the parents contend that the trial court erred in denying their motion to withdraw the admissions. Again, the record contains sufficient evidence to support the trial court's findings that the children were not to be integrated into the parents' home until the parents had begun to comply with the treatment plan and that respondents had

failed to do so. *See People in Interest of L.D.,* 671 P.2d 940 (Colo.1983). Thus, the motion was properly denied.

## C.

The parents also assert that the trial court erred in denying visitation in Adams County. However, the trial court's orders denying visitation were supported by substantial evidence; thus, we find no error in its decision requiring the parents to provide transportation to Adams County and to arrange for supervision acceptable to the department during visitations. *See People in Interest of L.D., supra; People in Interest of E.A., supra; People in Interest of K.C.,* 685 P.2d 1377 (Colo.App.1984).

The parents contend, however, that by requiring them to provide transportation and supervision and to establish a single family dwelling prior to allowance of visitation in Adams County, the trial court modified the treatment plan rendering it inappropriate. Again, we disagree.

■ The appropriateness of a treatment plan is measured by examining its likelihood of reuniting a parent and child in the kind of relationship which will be beneficial to both, under conditions which are designed to eliminate those factors which necessitated society's intrusion into the family in the first instance. *People in Interest of B.J.D.,* 626 P.2d 727 (Colo.App.1981).

■ Knowing that the children had been placed in the custody of the department and would be residing in Grand County, the parents agreed to, and the trial court approved, the treatment plan recommended by the department even though the parents were living in Adams County. The subsequent orders concerning the treatment plan served to clarify the plan by facilitating visitation outside of Grand County. In addition, they served to promote the treatment plan by encouraging the parents to obtain adequate living accommodations and to improve their deficient parenting skills, conditions which had necessitated the initial intrusion into the family.

**1030** 

The treatment plan and subsequent orders with respect thereto were realistic in light of the existing facts. *Cf. People in Interest of B.J.D., supra.* Moreover, compliance therewith was feasible in that the parents owned an automobile and could have arranged transportation for visitations. *See People in Interest of C.A.K., supra; People in Interest of S.T.,* 678 P.2d 1054 (Colo.App.1983).

### D.

 Finally, the parents contend that the trial court's application of §§ 19–1–103(20) and 19–11–105, C.R.S. (1978 Repl.Vol. 8), violated both the Fourteenth Amendment and Colo. Const. art. II, §§ 3, 20, and 25. They argue that the adjudication of dependency and neglect and the termination of the parent-child relationship were improperly based on the parents' financial status. This contention is without support in the record.

During the eleven months following approval of the treatment plan prior to termination, the Adams and Grand County Departments of Social Services made reasonable efforts to rehabilitate the parents and to aid them in finding low income housing. The record before us clearly reveals that the parents' failure to comply with the treatment plan was the result of their failure to make reasonable efforts to do so, not because of their financial status. *See People in Interest of E.A., supra.*

### III.

Because the matter must be remanded for a new hearing on termination of the parent-child legal relationship, the parents' remaining contentions are moot.

The trial court's judgment terminating the parent-child legal relationship is reversed, and the cause is remanded for new hearing to be commenced at least thirty days after the filing of a written motion alleging the factual grounds for termination.

BERMAN and STERNBERG, JJ., concur.