24CA1658 Peo in Interest of AS 06-12-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1658
El Paso County District Court No. 21JV517
Honorable Lin Billings Vela, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.S. and J.S., Children,

and Concerning S.M.,

Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE JOHNSON
Welling and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 12, 2025

---

Kenny Hodges, County Attorney, Melanie Douglas, Contract County Attorney,
Colorado Springs, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for
Appellant

¶ 1        S.M. (mother) appeals the judgment terminating her parent-child legal relationships with A.S. and J.S. (the children).[1] Specifically, she asserts that the juvenile court violated her due process right to a fundamentally fair proceeding.  Because we agree, we reverse the judgment and remand the case for further proceedings.

## I.        Background

¶ 2        In July 2021, the El Paso County Department of Human Services (the Department) filed a petition in dependency or neglect, alleging that mother had sought unnecessary medical care and procedures for her children.  Mother agreed to a deferred adjudication under section 19-3-505(5), C.R.S. 2024, in which she admitted that the family needed intervention and she agreed to comply with a treatment plan.  In August 2023, the juvenile court revoked mother's deferred adjudication.

---

[1] This case initially involved a third child, L.A.M., who has a different father.  The juvenile court allocated parental responsibilities for L.A.M. to the father.  Mother separately appealed that judgment, and a division of this court affirmed.  *See People in Interest of L.A.M.*, (Colo. App. No. 23CA1631, Aug. 1, 2024) (not published pursuant to C.A.R. 35(e)).

1

¶ 3    In June 2024, the Department moved to terminate mother's parental rights.  Mother did not appear at the termination hearing held on July 24, 2024, and she was not represented by counsel.  After hearing the evidence, the juvenile court granted the Department's motion and terminated the parent-child legal relationships between mother and the children under section 19-3-604(1)(c), C.R.S. 2024.

## II.    Standard of Review

¶ 4    "We review procedural due process claims de novo."  *People in Interest of C.J.*, 2017 COA 157, ¶ 25.  To establish a violation of due process, one must first establish a constitutionally protected liberty interest that warrants due process protections.  *Id.*

¶ 5    A parent has a fundamental liberty interest in the care, custody, and control of her child.  *Troxel v. Granville*, 530 U.S. 57, 66 (2000).  To protect the parental liberty interest, due process requires the state to provide fundamentally fair procedures to a parent facing termination.  *A.M. v. A.C.*, 2013 CO 16, ¶ 28.  These procedures must include a parent receiving notice of the hearing, advice of counsel, and the opportunity to be heard and defend.  *People in Interest of Z.P.S.*, 2016 COA 20, ¶ 40.

### III. Due Process

¶ 6      Mother asserts that the juvenile court violated her due process rights because it failed to provide her notice of the termination proceeding and did not reappoint her counsel. We agree.

#### A. Additional Facts

¶ 7      During this case, seven different attorneys represented mother, but this appeal focuses on her last three attorneys, whom we shall refer to as the first, second, and third attorneys.

¶ 8      The first attorney moved to withdraw in June 2022, asserting that he and mother were "unable to continue working together in any meaningful way." The juvenile court allowed the first attorney to withdraw, finding that mother had "created" the breakdown in communication. The court advised mother that if the same issues arose again, she would need to "make it work," represent herself, or retain counsel at her own expense.

¶ 9      The second attorney moved to withdraw in May 2023 because an "irreconcilable conflict had arisen" between her and mother and mother had requested that the attorney withdraw. The juvenile court granted the request to withdraw, finding that mother had caused an "irreconcilable breakdown in communication." Despite

the earlier warning, the court agreed to "try one more time" to appoint counsel for mother but advised her that this would be the last time.

¶ 10 The third attorney moved to withdraw in October 2023, initially stating that mother had asked him to do so but later clarifying that his request was, in fact, "based on [his] health reasons." The third attorney told the court at an October 2023 hearing that mother had made "noise about representing herself," although at the time he relayed this information, he could not "affirmatively" tell the court mother's position on self-representation should he be allowed to withdraw.

¶ 11 Upon further questioning, the third attorney stated that his health concerns were exacerbated by the way mother had been communicating with him. Specifically, he told the juvenile court that he was suffering from high blood pressure and hypertension, and noted, "I don't know if you can see my face, it's incredibly red." The court granted the third attorney's request to withdraw and declined to appoint another attorney to represent mother at that time, stating that mother had a "pattern" of creating this type of conflict. Mother was not present at this hearing.

¶ 12    Mother appeared at the next hearing in late December 2023, presided over by a different judge, who did not discuss the results of the previous hearing with mother or ask her if she still wanted an attorney. Mother then filed a few pro se papers over the next two months, but she did not appear at the next three hearings. At the third of those hearings in March 2024, the county attorney reported that the Department's caseworker had gone to mother's home and found an eviction notice on the door. She also stated that someone had used mother's benefits card in Utah, but the Department did not have any specific information on her whereabouts at that time. The county attorney stated that the Department intended to move for termination and would serve mother by publication if it could not locate her.

¶ 13    On June 22, 2024, the Department published notice of the termination hearing in the local newspaper. A few days later, on June 27, 2024, the Department filed a motion for termination and served mother by email (although the motion did not include the email address that the Department used to serve her). After the Department had already published notice, it filed with the court on June 26, 2024, an affidavit from the caseworker describing the

5

efforts the Department had made to locate mother. Among other things, the caseworker attested that she had filed a missing person report and discovered that police in Idaho had contacted mother. The caseworker had also completed a diligent search to locate a new address for mother without any success.

¶ 14 As noted, mother did not appear at the termination hearing held on July 24, 2024. Before terminating her parental rights, the juvenile court found that "service by publication [was] proper and properly documented within the [c]ourt file." The juvenile court then heard brief testimony from the caseworker before it terminated mother's parental rights.

## B. Analysis

¶ 15 For five reasons, we agree that mother was not afforded a fundamentally fair proceeding. As a result, we conclude that her due process rights were violated and, therefore, the court's order terminating her parental rights is reversed.

¶ 16 First, the Department did not comply with C.R.J.P. 2.2 when it served mother with notice of the termination hearing by publication. C.R.J.P. 2.2(b) provides that a parent must be personally served with a petition and an initial summons in

dependency or neglect proceedings, but once the juvenile court has acquired jurisdiction over a party, then "subsequent pleadings and notice" can be served by regular mail. It is undisputed that the Department did not provide mother with notice of the termination hearing through regular mail. And C.R.J.P. 2.2(b)(2) does not provide that a parent can be served with notice of a termination hearing by publication in lieu of service by regular mail once jurisdiction over a party has been established. Nor do the Department and guardian ad litem direct us to any authority that would allow service of the notice by publication under the circumstances presented here.[2]

¶ 17    Second, even assuming that notice of the termination hearing could be served by publication, the record shows that the Department did not comply with the procedure for service by

---

[2] We acknowledge that some of the court's orders mailed to mother's Denver address were returned to the court as undeliverable with no known forwarding address. The Department argues that it saw no point serving the motion at that physical address. But those notices were made part of the record on May 28, 2024. The motion to terminate parental rights was not filed until almost a month later on June 27. Following those notices, mother could have submitted a mail-forwarding request with the postal office.

publication. *See* § 19-3-503(8)(b), C.R.S. 2024; C.R.C.P. 4(g). For example, C.R.C.P. 4(g) requires the party seeking to serve notice by publication to file a verified motion setting forth the facts authorizing service by publication. But the Department never filed such a motion. And although the Department submitted a caseworker's affidavit describing some of the efforts taken to locate mother, it did not do so until weeks after it had already published notice.

¶ 18 Third, the juvenile court and the Department did not comply with the mandatory timelines for commencement of a termination hearing set forth in section 19-3-602, C.R.S. 2024. *See People in Interest of C.L.S.*, 705 P.2d 1026, 1029 (Colo. App. 1985) (when the General Assembly imposes mandatory conditions that must be satisfied before entry of termination, failure to satisfy those conditions constitutes reversible error). Specifically, section 19-3-602(1) requires that a termination motion "be filed at least thirty days before" a termination hearing, but, in this case, the Department filed its termination motion on June 27, 2024, and the hearing occurred on July 24, 2024. *See C.L.S.*, 705 P.2d at 1029 (concluding that the department's failure to comply with the thirty-

day requirement in a predecessor statute constituted reversible error).

¶ 19 Fourth, it is unclear whether the Department properly served mother with the motion for termination under C.R.C.P. 5. *See* C.R.J.P. 1 (noting that the Rules of Civil Procedure apply in a dependency or neglect proceeding if a specific procedure is not covered in the Rules of Juvenile Procedure or the Children's Code); *see also People in Interest of M.M.*, 726 P.2d 1108, 1116 (Colo. 1986) (applying C.R.C.P. 5 in a dependency or neglect appeal). The record shows that the Department served mother by email, but the certificate of service does not provide the email address that the Department sent the notice. C.R.C.P. 5(b)(2)(D) allows a party to serve a motion by "electronic means" if "consented to in writing by the person served." And a party may consent to receiving service by email if the party provides an email address in pleadings or other papers. *See Brightstar LLC v. Jordan*, 2024 COA 39, ¶ 44. To be sure, when mother made pro se filings, she included her email address. But because we do not know whether the Department

sent the notice to the same email address, we cannot say for certain whether mother consented to service by email.[3]

¶ 20    Finally, the juvenile court did not comply with C.R.C.P. 121, section 1-1(2)(b), when it allowed the third attorney to withdraw, and we therefore cannot determine from the record whether mother waived her right to counsel. Under C.R.C.P. 121, section 1-1(2)(b), an attorney may withdraw from a case with the court's approval after the attorney files a motion with the court and the client has fourteen days to object. The certificate of service to the motion to withdraw states that mother was served on October 19, 2023, but the court allowed counsel to withdraw on October 30, 2023, fewer than fourteen days after service. *See Weatherly v. Roth*, 743 P.2d 453, 455 (Colo. App. 1987) (determining that the trial court erred by granting a party's motion twelve days after it was filed when the rule allowed fifteen days to respond). What is more, counsel served

---

[3] The Department contends that mother's actual email address was not provided on the termination motion due to safety concerns between her and father. That may be true, but mother's email was already in the record with mother including it on her pro se filings. The Department could have filed a notice under seal notifying the court of the actual email address it served the motion to if, for example, mother had an updated or different email address that the Department did not want to disclose to father.

mother by email, but at that time, she had not filed any pleadings or other papers with her email address and therefore did not consent to service by email under C.R.C.P. 5. More importantly, the email address listed is not the one mother provided on her subsequent filings; instead, the record indicates that the email address may have belonged to the special respondent in the case.

¶ 21 In sum, based on this record, we cannot say that mother had proper notice of the third attorney's motion to withdraw, the termination notice, or the termination hearing. We therefore agree with mother that she was not provided fundamentally fair procedures before the juvenile court terminated her parental rights.

## IV. Conclusion

¶ 22 The judgment is reversed, and the case is remanded to the juvenile court for further proceedings. On remand, the court shall (1) determine whether mother is entitled to reappointment of counsel; (2) ensure that mother is provided proper notice of the termination proceeding; and (3) conduct a termination hearing not less than thirty days after service of the termination motion.

JUDGE WELLING and JUDGE GROVE concur.

11